IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 2014-cv-456

CONNOR McSWEENEY,

    Plaintiff,

v.

PETER JANES, M.D.; KATHRYN REANEY, PA-C; JENNIFER THEISEN, RRT; ST. ANTHONY SUMMIT MEDICAL CENTER; and VAIL-SUMMIT ORTHOPAEDICS, P.C

    Defendants.

## PLAINTIFF'S COMPLAINT, JURY DEMAND AND CERTIFICATE OF REVIEW

Plaintiff, Connor McSweeney, by and through his attorneys, Leventhal, Brown & Puga, P.C., hereby submits the following Complaint, Jury Demand and Certificate of Review:

### I. CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

1. Counsel has consulted with physicians and health care providers with expertise in the areas of the alleged conduct as set forth in Plaintiff's Complaint;

2. The physicians and health care providers who have been consulted have reviewed all known facts relevant to the allegations of conduct as complained of in Plaintiff's Complaint;

3. Based upon such facts, these physicians and health care providers have concluded the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

4. The physicians and health care providers who have reviewed all known facts relevant to the allegations of conduct as contained in Plaintiff's Complaint for Damages meet the requirements set forth in C.R.S. § 13-64-401.

## II. PARTIES AND JURISDICTION

5. This Honorable Court has jurisdiction as this is a diversity action filed under the provisions of 28 U.S.C. § 1332 by reason of the diversity of the citizenship of the parties and the amount in controversy. The Plaintiff is a citizen of Indiana. The Defendants are citizens of Colorado or corporations incorporated under the law of Colorado with their principal places of business in Colorado. The amount in controversy, without interest and costs, exceeds $75,000.00.

6. Plaintiff, Connor McSweeney, hereafter referred to as "Plaintiff McSweeney" is and was, at all times relevant, a resident of the State of Indiana.

7. Upon information and belief, at all relevant times, Peter Janes, M.D., hereafter referred to as "Defendant Janes", was a physician licensed to practice medicine in the State of Colorado, who at all times relevant, resided in the State of Colorado.

8. Upon information and belief, at all relevant times, Kathryn Reaney, PA-C, hereafter referred to as "Defendant Reaney", was a physician assistant licensed in the State of Colorado, who at all times relevant, resided in the State of Colorado.

9. Upon information and belief, at all relevant times, Jennifer Theisen, RRT, hereafter referred to as "Defendant Theisen", was a respiratory therapist licensed in the State of Colorado, who at all times relevant, resided in the State of Colorado.

10. Upon information and belief, at all relevant times, Defendant Vail-Summit Orthopaedics, P.C., (hereinafter "Defendant Vail-Summit Orthopaedics") had its principal place

of business at 360 Peak One Drive, Suite 180, Frisco, CO 80443 and was authorized to do business in the State of Colorado.

11. Upon information and belief, Defendant, St. Anthony Summit Medical Center, hereinafter to as "Defendant Summit Medical Center" had its principal place of business at 340 Peak One Drive, Frisco, CO 80443 and was authorized to do business in the State of Colorado.

### III. GENERAL ALLEGATIONS

12. Plaintiff incorporates paragraphs 1 through 11 herein by reference.

13. On March 11, 2012, Plaintiff McSweeney suffered an injury to his left leg while snowboarding at Breckenridge Ski Resort.

14. Plaintiff McSweeney was initially taken to the "Peak 8" First Aid Room at approximately 1545 and evaluated for a fracture and pain in his left femur.

15. Summit County Ambulance was contacted and arrived on scene at approximately 1550.

16. Plaintiff McSweeney was taken by ambulance to the Emergency Department ("ED") at Defendant Summit Medical Center, where he arrived at approximately 1638.

17. Upon arrival to the ED, Plaintiff McSweeney presented without weakness or numbness in his feet, severe pain in his left femur, no shortness of breath, stable vital signs, and no reported loss of consciousness.

18. Plaintiff McSweeney presented with no neurological signs, symptoms, or deficits; including no headache, no confusion, no weakness, no paresthesia, and normal strength and sensation distal to the injury at the ankle and foot.

19. While in the ED, Plaintiff McSweeney received two liters of oxygen via nasal cannula and had "Pulse Ox" readings of 96% and 98% at 1706 and 1643 hours, respectively.

20. X-Ray imaging of Plaintiff McSweeney's left femur revealed a "left proximal femur intertrochanteric fracture."

21. CT scan of Plaintiff McSweeney's chest, abdomen, and pelvis were negative for injuries.

22. Upon information and belief Defendant Janes, an orthopedic surgeon, evaluated Plaintiff McSweeney's left leg.

23. Defendant Janes made the recommendation to surgically repair Plaintiff McSweeney's left femur.

24. Plaintiff McSweeney was admitted to the hospital and prepared for surgery.

25. Upon information and belief, at or around 1914, Plaintiff McSweeney was placed under anesthesia and underwent surgery to repair his "displaced oblique subtrochanteric left hip fracture" by Defendant Janes and assisted by Matthew R. Cain, PA-C.

26. Upon information and belief, the surgery was successfully performed absent complications.

27. Plaintiff McSweeney was taken to PACU at approximately 2250.

28. While in the PACU, Plaintiff McSweeney was reported to have an oxygen saturation level of 98% with two liters of oxygen per minute via nasal cannula.

29. Plaintiff McSweeney was discharged from the PACU to the nursing unit for recovery at or about 2336.

30.     Plaintiff McSweeney was evaluated on the nursing unit at 0000 on March 12, 2012, at that time, his oxygen saturation level was 93% on two liters of oxygen per minute via nasal cannula.

31.     At 0055, Plaintiff McSweeney was reported to have an oxygen saturation level of 96% on two liters of oxygen per minute via nasal cannula.

32.     At 0400, Plaintiff McSweeney was reported to have an oxygen saturation level of 97% on two liters of oxygen per minute via nasal cannula.

33.     At 0800, Plaintiff McSweeney was reported to have an oxygen saturation level of 92% on two liters of oxygen per minute via nasal cannula.

34.     On March 12, 2012 at 1017, during a physical therapy evaluation, Plaintiff McSweeney's oxygen saturations dropped to 70% while on three liters of oxygen per minute.

35.     Plaintiff McSweeney required four liters of supplemental oxygen via nose cannula during physical therapy while gait training.

36.     At 1200, Plaintiff McSweeney was reported to have an oxygen saturation level of 96% on two liters of oxygen per minute via nasal cannula.

37.     At 1524, Plaintiff McSweeney was reported to need three liters of oxygen per minute while at rest and four liters of oxygen per minute with mobility.

38.     At 1600, Plaintiff McSweeney was reported to have an oxygen saturation level of 94% on two liters of oxygen per minute via nasal cannula.

39.     At 1952, Plaintiff McSweeney was reported to have an oxygen saturation level of 97% on two and a half liters of oxygen per minute via nasal cannula.

40. At 2250, Plaintiff McSweeney was reported to have an oxygen saturation level of 94% on two liters of oxygen per minute via nasal cannula.

41. On March 13, 2012, at 0000, Plaintiff McSweeney was reported to have an oxygen saturation level of 93% on two and a half liters of oxygen per minute via nasal cannula.

42. At 0400, Plaintiff McSweeney was reported to have an oxygen saturation level of 99% on two and a half liters of oxygen per minute via nasal cannula.

43. At 0730, Plaintiff McSweeney was reported to have an oxygen saturation level of 97% on two liters of oxygen per minute via nasal cannula.

44. At 0800, Plaintiff McSweeney was reported to have an oxygen saturation level of 97% on three and a half liters of oxygen per minute via nasal cannula.

45. At 0900, a physical assessment was done of Plaintiff McSweeney which noted weak respiratory effort with narcotics.

46. At 1002, Plaintiff McSweeney's oxygen flow rate was noted to be three liters per minute at rest and four liters per minute with mobility.

47. At 1200, Plaintiff McSweeney was reported to have an oxygen saturation level of 95% on two liters of oxygen per minute via nasal cannula.

48. At 1530, Plaintiff McSweeney underwent treatment to evaluate his mobility and to bathe.

49. Upon information and belief, while Plaintiff McSweeney was in the shower, he was on one liter of oxygen per minute.

50. Upon information and belief, while Plaintiff McSweeney walked with the use of crutches from the bathroom to the bed, he was taken off supplemental oxygen.

51. Plaintiff McSweeney's oxygen saturations dropped to 75% while he walked with the use of crutches from the bathroom to the bed.

52. Upon information and belief, Plaintiff McSweeney received two liters of oxygen per minute via nasal cannula and his oxygen saturations increased to 90%.

53. At 1925, Plaintiff McSweeney was reported to have an oxygen saturation level of 98% on two liters of oxygen per minute via nasal cannula.

54. At 1927, Plaintiff McSweeney was reported to have an oxygen saturation level of 96% on two liters of oxygen per minute via nasal cannula.

55. At 1939, a physical assessment was performed on Plaintiff McSweeney which noted weak respiratory effort with narcotics.

56. On March 14, 2012 at 0710, Plaintiff McSweeney was reported to have an oxygen saturation level of 92% on two liters of oxygen per minute via nasal cannula.

57. At 0800, Christie Cleary, RN began to wean Plaintiff McSweeney from supplemental oxygen.

58. At 0850, Defendant Reaney and Defendant Janes ordered the discharge of Plaintiff McSweeney.

59. At 1000, during respiratory education, Plaintiff McSweeney was reported to have room air oxygen saturation of 66%.

60. At 1000, during respiratory education, it was reported that Plaintiff McSweeney needed 3 liters of supplemental oxygen per minute at rest.

61. At 1047, Plaintiff McSweeney was reported to have an oxygen saturation level of 91% on two liters of oxygen per minute via nasal cannula.

62. At 1048, Plaintiff McSweeney was reported to have an oxygen saturation level of 66% on room air.

63. At 1214, Plaintiff McSweeney was reported to have an oxygen saturation level of 91% on 2 liters of oxygen per minute via nasal cannula.

64. At 1328, Christie Cleary, RN noted that Plaintiff McSweeney required Oxycontin, Oxy IR and Valium for pain.

65. At 1328, Christie Cleary, RN noted that Plaintiff McSweeney would be discharged on supplemental oxygen.

66. At 1328, Christie Cleary, RN noted that Plaintiff McSweeney's oxygen saturations were 66-83% on room air.

67. At 1328, Christie Cleary, RN noted that Plaintiff McSweeney required three liters of supplemental oxygen.

68. At 1419, the discharge assessment plan was completed by Marilyn Malmgren, RN.

69. Plaintiff McSweeney was discharged on March 14, 2012 at approximately 1454 hours.

70. Defendant Janes was made aware of Plaintiff McSweeney's oxygen saturation decrease prior to discharge.

71. Defendant Janes was not made aware of Plaintiff McSweeney's oxygen saturation decrease prior to discharge.

72. Defendant Reaney was made aware of Plaintiff McSweeney's oxygen saturation decrease prior to discharge.

73. Defendant Reaney was not made aware of Plaintiff McSweeney's oxygen saturation decrease prior to discharge.

74. At discharge, Plaintiff McSweeney was prescribed Valium at 5mg 3 times daily, Lovenox at 40mg daily, Oxycontin at 20 mg 2 times daily, and Oxy IR at 5mg every 4-6 hours as needed by Matt Cain, PA-C and Defendant Janes..

75. Upon information and belief, a prescription for home respiratory services was written and filled out for Plaintiff McSweeney for 2 Lpm, 24 Hours/Day, for one month by Defendant Theisen.

76. Upon information and belief, a prescription for home oxygen was signed by Defendant Reaney.

77. After being discharged on March 14, 2012, Plaintiff McSweeney along with his brother and his father traveled to the Best Western hotel in Louisville, Colorado where they planned to sleep the night before flying home to Indiana.

78. During this time, Plaintiff McSweeney was given his prescription pain medication by his father, Mark McSweeney, as directed on the label.

79. Plaintiff McSweeney remained on the supplemental oxygen as prescribed.

80. On March 15, 2012, Plaintiff McSweeney was found by his family unarousable and unresponsive.

81. An ambulance was called at approximately 0727.

82. An ambulance arrived at approximately 0733 and emergently took Plaintiff McSweeney to the Emergency Department at Avista Adventist Hospital with a chief complaint of altered mental state.

83. Plaintiff McSweeney underwent a CT scan of his head which showed subtle diffuse pattern suggestive of diffuse anoxic injury.

84. Plaintiff McSweeney underwent a CT scan of his chest which showed left lower lobe pneumonia.

85. Plaintiff McSweeney was placed in the intensive care unit on a ventilator.

86. Plaintiff was transferred to St. Anthony Central in Denver via flight for life with encephalopathy and respiratory failure.

87. Plaintiff McSweeney was hospitalized at St. Anthony Central until March 27, 2013 with the diagnosis of severe anoxic brain injury, hyperpyrexia, aspiration pneumonia, elevated troponin and rhabdomyolysis.

88. At the time of his discharge Plaintiff McSweeney was unable to walk independently, had significant difficulty with fine motor skills, and difficulty finding words.

89. Plaintiff McSweeney was transferred to a rehabilitation hospital in Indiana for extended care and treatment as an inpatient until May 3, 2012.

90. Plaintiff McSweeney has continued to suffer severe cognitive deficits, aphasia, right hemiparesis and spasticity, sleep disturbance and labile mood due to his permanent anoxic brain injury.

### IV. FIRST CLAIM FOR RELIEF
*(Medical Negligence – Peter Janes, M.D.)*

91. Plaintiff incorporates Paragraphs 1 through 90 herein by reference.

92. At all relevant times, Defendant Janes was a physician specializing in orthopedic surgery.

93. At all relevant times, Plaintiff McSweeney was under the care and treatment of Defendant Janes.

94. With respect to his care and treatment of Plaintiff McSweeney, Defendant Janes, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physicians in similar situations.

95. Defendant Janes, deviated from the standard of care and was negligent in his care and treatment of Plaintiff McSweeney by:

   a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff McSweeney's medical condition;

   b. Failing to timely and appropriately respond to Plaintiff McSweeney's signs and symptoms;

   c. Discharging Plaintiff McSweeney without an explanation for his signs and symptoms;

   d. Discharging Plaintiff McSweeney in an unstable condition; and

   e. Discharging Plaintiff McSweeney on supplemental oxygen and opioid pain medication without a proper evaluation of his signs and symptoms of desaturations and its cause.

96. As a direct and proximate result of the negligence of Defendant Janes, Plaintiff McSweeney has suffered injuries, damages, and losses as described herein, including but not limited to past and future medical expenses, loss of income, loss of earning potential, loss of essential and home services, permanent physical impairment and disfigurement, permanent cognitive deficits, pain and suffering, mental anguish, and emotional distress.

### V. SECOND CLAIM FOR RELIEF
*(Vicarious Liability – Peter Janes, M.D.)*

97. Plaintiff incorporates Paragraphs 1 through 96 herein by reference.

98. C.R.S. 12-36-106(5)(b)(I), requires in part, for physician assistants performing acts which constitute the practice of medicine, that "the act[s] shall not be performed except under the personal and responsible direction and supervision of a person licensed…to practice medicine…The board, by rule, may define what constitutes appropriate direction and supervision of a physician assistant."

99. Pursuant to 3 Colo. Code Regs. 713-7; the primary physician supervisor is responsible for the conduct of physician assistants.

100. At all relevant times, Defendant Janes, as a physician, supervised Defendant Reaney.

101. With respect to her care and treatment of Plaintiff McSweeney, Defendant Reaney breached her duty and was negligent by:

   a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff McSweeney's medical condition;

   b. Failing to timely and appropriately respond to Plaintiff McSweeney's signs and symptoms;

   c. Discharging Plaintiff McSweeney without an explanation for his signs and symptoms;

   d. Discharging Plaintiff McSweeney in an unstable condition; and

   e. Discharging Plaintiff McSweeney on supplemental oxygen and opioid pain medication without a proper evaluation of his signs and symptoms of desaturations and its cause.

102. Defendant Janes, is responsible by law for the negligence of Defendant Reaney and, therefore, for the injuries, damages and losses suffered by Plaintiff McSweeney, as set forth above.

### VI.   THIRD CLAIM FOR RELIEF
(*Vicarious Liability* – **Vail-Summit Orthopaedics**)

103. Plaintiff incorporates by reference Paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104. Defendant Summit Medical Center is responsible by law for the acts and omissions of its employees, agents, officers and/or servants.

105. At all times relevant, Defendant Reaney was the employee, servant, and/or agent of Defendant Summit Medical Center, acting within the course and scope of her employment and/or within her actual or apparent authority as agent.

106. With respect to her care and treatment of Plaintiff McSweeney, Defendant Reaney breached her duty and was negligent by:

   a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff McSweeney's medical condition;

   b. Failing to timely and appropriately respond to Plaintiff McSweeney's signs and symptoms;

   c. Discharging Plaintiff McSweeney without an explanation for his signs and symptoms;

   d. Discharging Plaintiff McSweeney in an unstable condition; and

   e. Discharging Plaintiff McSweeney on supplemental oxygen and opioid pain medication without a proper evaluation of his signs and symptoms of desaturations and its cause.

107. Defendant Summit Medical Center is responsible by law for the negligence of Defendant Reaney and, therefore, for the injuries, damages and losses suffered by Plaintiff McSweeney, as set forth above.

### VII.   FOURTH CLAIM FOR RELIEF
*(Respondeat Superior – St. Anthony Summit Medical Center)*

108. Plaintiff incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109. On or about March 11 - March 14, 2012, Plaintiff was under the care and treatment of nurses and other medical personnel employed by Defendant Summit Medical Center.

110. Upon information and belief at all relevant times, these medical personnel, including nurses and other medical care providers, were employees, agents, officers and/or servants of Defendant Summit Medical Center, and were acting in the course and scope of their employment, office or authority.

111. Defendant Summit Medical Center is responsible for the negligent acts and omissions of their employees, agents, officers, and/or servants.

112. Defendant Summit Medical Center, acting through their employees, agents, officers, and/or servants, who were acting within the course and scope of their employment or within their authority, were negligent in their care and treatment of Plaintiff McSweeney, including, but not limited to, the following:

    a. Failing to provide timely and appropriate nursing care, treatment and diagnosis of Plaintiff McSweeney;

    b. Failing to properly and timely consult with appropriate medical professional regarding the care and treatment of Plaintiff McSweeney;

      c. Failing to ensure that Plaintiff McSweeney received timely and appropriate evaluation of his medical condition; and

      d. Failing to take proper and adequate precautions to prevent Plaintiff McSweeney from being discharged in an unstable condition.

113. Defendant Summit Medical Center is responsible by law for the negligence of its employees, agents, officers and/or servants, and, therefore, for the injuries, damages and losses suffered by Plaintiff McSweeney, as set forth above.

### VIII. SEVENTH CLAIM FOR RELIEF
*(Negligence – Kathryn Reaney, PA-C)*

114. Plaintiff incorporates Paragraphs 1 through 113 herein by reference.

115. At all relevant times, Defendant Reaney was a physician assistant.

116. At all relevant times, Plaintiff McSweeney was under the care and treatment of Defendant Reaney.

117. With respect to her care and treatment of Plaintiff McSweeney, Defendant Reaney, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of physician assistants in similar situations.

118. Defendant Reaney, deviated from the standard of care and was negligent in her care and treatment of Plaintiff McSweeney by:

      a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff McSweeney's medical condition;

      b. Failing to timely and appropriately respond to Plaintiff McSweeney's signs and symptoms;

      c. Discharging Plaintiff McSweeney without an explanation for his signs and symptoms;

      d. Discharging Plaintiff McSweeney in an unstable condition; and

      e. Discharging Plaintiff McSweeney on supplemental oxygen and opioid pain medication without a proper evaluation of his signs and symptoms of desaturations and its cause.

119. As a direct and proximate result of the negligence of Defendant Reaney Plaintiff McSweeney has suffered injuries, damages, and losses as described above.

## IX. SEVENTH CLAIM FOR RELIEF
*(Negligence – Jennifer Theisen, RRT)*

120. Plaintiff incorporates Paragraphs 1 through 119 herein by reference.

121. At all relevant times, Defendant Theisen was a respiratory therapist.

122. At all relevant times, Plaintiff McSweeney was under the care and treatment of Defendant Theisen.

123. With respect to her care and treatment of Plaintiff McSweeney, Defendant Theisen, owed a duty to exercise that degree of care, skill, caution, diligence and foresight exercised by and expected of respiratory therapists in similar situations.

124. Defendant Theisen, deviated from the standard of care and was negligent in her care and treatment of Plaintiff McSweeney by:

      a. Failing to timely and appropriately evaluate, diagnose, monitor, supervise, care, and treat Plaintiff McSweeney's medical condition;

      b. Failing to timely and appropriately respond to Plaintiff McSweeney's signs and symptoms;

      c. Failing to properly and timely consult with appropriate medical professionals regarding the care and treatment of Plaintiff McSweeney;

      d. Failing to ensure that Plaintiff McSweeney received timely and appropriate evaluation of his medical condition; and

  e. Failing to take proper and adequate precautions to prevent Plaintiff McSweeney from being discharged in an unstable condition.

125. As a direct and proximate result of the negligence of Defendant Theisen, Plaintiff McSweeney has suffered injuries, damages, and losses as described above.

WHEREFORE, Plaintiff McSweeney respectfully prays for compensatory damages in his favor and against Defendants in an amount to be determined by the trier of fact, interest from the date of filing, pre-judgment and post-judgment interest as allowed by law, witness fees, filing fees, deposition expenses, attorney's fees, and for such other and further relief as the Court may deem appropriate and just including all costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted this 21st day of February, 2014.

           LEVENTHAL, BROWN & PUGA, P.C.

           *A duly signed original is available for inspection at the offices of Leventhal, Brown & Puga, P.C.*

        By:  /s/Molly Greenblatt Welch
           Jim Leventhal, #5815
           Molly Greenblatt Welch, #36252
           Nick Temming, 41127

           *Attorneys for Plaintiff*

**Plaintiff's Address:**
1230 South Rolling Ridge Way, Apartment L9
Bloomington, IN 47403